## UNITED STATES v. ALBERT LORSCH & CO.

(Circuit Court, S. D. New York. May 12, 1909.)

### No. 5,392.

CUSTOMS DUTIES (§ 37*)—CLASSIFICATION—CUT AGATE—"PRECIOUS STONES ADVANCED"—"MANUFACTURES OF AGATE, GARNET, ETC."

Small pieces of agate, garnet, etc., advanced from their natural state by cutting or other process, for the purpose of fitting them for use as settings for jewelry, and known commercially as agates, garnets, etc., are more specifically provided for as "precious stones advanced," under Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 435, 30 Stat. 192 (U. S. Comp. St. 1901, p. 1676), than as "manufactures of agate, garnet, etc.," under Schedule B, par. 115, 30 Stat. 159 (U. S. Comp. St. 1901, p. 1636).

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 37.*]

On Application for Review of a Decision by the Board of United States General Appraisers.

The decision below, which is reported as G. A. 6,825 (T. D. 29,-337), sustained the importers' protest against the assessment of duty by the collector of customs at the port of New York. The Board's opinion reads:

SHARRETTS, General Appraiser. The merchandise in controversy consists of precious stones, such as agate, cornelian, jasper, onyx, rock crystal, etc., advanced in value and condition by cutting, polishing, or engraving, not set, but intended to be set as jewelry. No articles of utility, such as handles, bearings, slabs, rollers, etc., are included in the importation. Duty was assessed by the collector upon said merchandise at the rate of 50 per cent. ad valorem under paragraph 115, Schedule B; the importers claiming the same to be dutiable at 10 per cent. ad valorem under paragraph 435, Schedule N, of the tariff act of 1897 (Act July 24, 1897, c. 11, § 1, 30 Stat. 192 [U. S. Comp. St. 1901, pp. 1636, 1676]).

The provision of paragraph 115 for manufactures of agate, alabaster, chalcedony, chrysolite, coral, cornelian, garnet, jasper, jet, malachite, marble, onyx, rock crystal, or spar, not specially provided for, is no more specific than the provision of paragraph 193, Schedule C, 30 Stat. 167 (U. S. Comp. St. 1901, p. 1645), for articles or wares not specially provided for, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal. No one would seriously contend that, because Congress provided denominatively for articles composed wholly of gold in paragraph 193, gold mountings for diamonds or other precious stones were removed from paragraph 434, Schedule N, 30 Stat. 192 (U. S. Comp. St. 1901, p. 1676), leaving the provision therein for parts of jewelry to apply only to such as were made of brass or other metal not named in paragraph 193. Precious stones advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, and not set, or, in other words, precious stones advanced from their natural state to a condition exclusively fitting them to be set as jewelry, comprise even a more limited class of goods than jewelry or parts thereof. Both terms have a commercial and popular meaning that differentiates them from manufactures of agate, garnet, etc., on the one hand, and articles or wares composed of iron, steel, gold, etc., on the other.

It is instructive to note that paragraph 434 provides for jewelry, including precious stones set. Hence the words "precious stones not set," contained in paragraph 435, construed in pari materia, would seem to point conclusively to precious stones especially prepared to be set as jewelry; and in this connection it may be remarked that both paragraphs are grouped under the subheading of "Jewelry and Precious Stones." It is an elementary principle of tariff construction that, when Congress has provided for an article depend-

ent upon its use, such a provision dominates all others. For instance, whitewood, sycamore, and basswood planks prepared for use in the construction of vessels would be free under paragraph 699, § 2, Free List, 30 Stat. 202 (U. S. Comp. St. 1901, p. 1689), and not dutiable under Schedule D, par. 195, 30 Stat. 167 (U. S. Comp. St. 1901, p. 1646), notwithstanding the fact that whitewood, sycamore, and basswood planks are provided for eo nomine in the last-named paragraph. Many other illustrations could be cited, but they are deemed unnecessary.

Both paragraphs 115 and 193 are catch-all provisions designed to cover manufactures not provided for either denominatively or descriptively in some other paragraph of the act. Parts of jewelry composed of gold are more specifically provided for in paragraph 434 than in paragraph 193; and by a parity of reasoning agates and other precious stones prepared by the lapidary to be set as jewelry are more specifically provided for in paragraph 435 than in paragraph 115. Indeed, we do not think the agate and other stones in question would be included in the provision of paragraph 115 for manufactures of agate, etc., even were they not provided for descriptively in paragraph 435. The evidence shows conclusively that these stones have undergone no process other than to be cut and polished, and that they are still known commercially as precious stones—specifically as agates, garnets, etc. They have not undergone a process of manufacture whereby their name and intended purpose of use has been changed into articles known as knife handles, penholders, scale bearings, etc. Precious stones cut are provided for in paragraph 434, and until they have been cut for some other purpose than to be set as jewelry they do not become manufactures of the minerals enumerated in paragraph 115. In Hartranft v. Wiegmann, 121 U. S. 615, 7 Sup. Ct. 1240, 30 L. Ed. 1012, the United States Supreme Court said in part: "In Schedule M, § 2504, of the Revised Statutes (page 475, 2d Ed.), a duty of 30 per cent. ad valorem is imposed on 'coral, cut or manufactured'; and in section 2505 (page 484) 'coral marine manufactured' is made exempt from duty. These provisions clearly imply that, but for the special provision imposing a duty on cut coral, it would not be regarded as a manufactured article."

In the case at bar the agates and other precious stones have been subjected to no process other than cutting, polishing, or a similar process. Hence, under the explicit language of the Supreme Court, they are not manufactures of agate, garnet, etc.; nor can we discover in any instance where the courts have departed from the rule laid down by the Supreme Court in Hartranft v. Wiegmann, supra. In Erhardt v. Hahn, 55 Fed. 273, 5 C. C. A. 99, the United States Circuit Court of Appeals, Second Circuit, in passing upon handles for knives, penholders, glove hooks, shoe hooks, etc., composed of agate and tiger eye, held that, having been advanced through one or more processes into commercial articles known and recognized in trade by specific and distinctive names other than the name of the material, and put into completed shapes designed and adapted for a particular use, were manufactures. But the following dictum of the court shows how rigidly it adhered to the decision of the Supreme Court in the case cited: "If it could be shown that these articles at the date of the tariff act were bought and sold as precious stones, or were commercially known as such, then, no doubt, they would have to fall under that classification for duty. Not only had these articles (handles, paper weights, etc.) no such commercial designation, but the stones themselves (cut for jewelry purposes), when imported in the form of stones, were bought and sold, as were rubies, diamonds, and other precious stones, by their respective distinctive names. We think the term as used in Schedule N applies to all stones known as 'precious,' whether in their original condition or advanced beyond it by cutting, polishing, etc., so long as they remain 'stones' in the commercial sense of the word."

In Hahn v. U. S., 100 Fed. 635, 40 C. C. A. 622, his honor, Judge Lacombe, speaking for the court, said in part: "This court further held in Erhardt v. Hahn, 55 Fed. 273, 5 C. C. A. 99, supra, that the term 'precious stones' applied only to the mineral substances embraced within it while they remained stones, and that articles like those in suit (handles, rollers, and slabs) had been advanced beyond that condition, and had become completed commercial articles, known and recognized in trade by specific and distinctive names other than

the name of the material, and had been put into a completed shape designed and adapted for particular uses."

The government's contention that the stones in the case now pending are dutiable at 50 per cent. ad valorem under paragraph 115 is based on the decision of the Circuit Court of Appeals, Second Circuit, in the case of U. S. v. Lorsch, 158 Fed. 398, 86 C. C. A. 34, T. D. 28,513. We do not find anything in that decision, however, which justified such a classification. It must be borne in mind that the court in the Lorsch Case was dealing with agate bearings for scales—articles having a distinctive name and intended for utilitarian purposes, and not with articles still commercially known as stones intended exclusively to be set as jewelry. The Board, in passing upon the case, had expressed the opinion that, inasmuch as paragraph 434, unlike paragraph 115, did not contain the qualifying words "not specifically provided for," the agate bearings in question were more specifically provided for in paragraph 434 than as manufactures of agate under paragraph 115. His honor, Judge Lacombe, who reviewed the Board's decision said: "We do not concur in this conclusion. The group of articles known as diamonds and other precious stones includes many different species. When Congress selects by name one of those species, and provides that *manufactures* of that particular stone should be dutiable at a different rate, it so clearly indicates its intention to withdraw the article from the general group *as soon as it becomes* a completed manufacture that the absence of the words 'not specially provided for' in the paragraph covering the group is not particularly significant. Indeed, importers' counsel concedes that agate paper weights, blotters, paper cutters, seals, and the like would be properly classified under paragraph 115. These agate bearings, *which have become completed manufactures, salable as such in trade*, are plainly susceptible of a similar classification." The italics are our own, and are inserted to emphasize the point that the court drew a distinction between stones cut to be set as jewelry and agate made into completed articles for industrial uses.

This difference is further emphasized by the court's reference to the lower court having affirmed the Board in the agate bearings case on the authority of U. S. v. Benedict, 145 Fed. 914, 76 C. C. A. 446, T. D. 27,032, and by the statement that the Benedict Case related to precious stones cut cabochon, intaglio, cameo, and other well-recognized cuts, mainly used for jewelry, while in the Lorsch Case the court said: "We are clearly of the opinion that these agate bearings have become a manufacture separate and distinct from the 'precious stones advanced' of paragraph 435." In all of the decisions cited it is manifest that industrial articles manufactured from agate or the other minerals enumerated in paragraph 115 are dutiable thereunder at 50 per cent. ad valorem, while precious stones, including the species named in paragraph 115, advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, and not set, if known commercially as precious stones and designed for use in the manufacture of jewelry, are dutiable at 10 per cent. ad valorem under paragraph 435.

In consonance with the views herein expressed, and on the authority of the decisions cited, we sustain the protests and reverse the collector's decision.

Addison S. Pratt, Asst. U. S. Atty.

Comstock & Washburn (Albert H. Washburn, of counsel), for importers.

PLATT, District Judge. Decision affirmed, on the opinion of the Board.